NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HERITAGE PHARMACEUTICALS, INC.** | Civil Action No. 16-8483 (PGS) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **GLAZER, et al.** | |
| **Defendants.** | |

BONGIOVANNI, United States Magistrate Judge

This matter comes before the Court upon Jeffrey Glazer ("Glazer") and Jason Malek's ("Malek") (collectively, "Defendants") motions seeking to disqualify Gibson, Dunn & Crutcher L.L.P. ("Gibson Dunn") from representing Plaintiff Heritage Pharmaceuticals, L.L.P. ("Heritage") in the present action (Docket Entry Nos. 54 and 56). Heritage opposes the motions. (Docket Entry Nos. 62 ad 63). The Court considers the motions on the papers pursuant to L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motions to disqualify Gibson Dunn from representing Heritage are DENIED.

## I.     Background

As the facts and arguments raised by the parties are well-known to both them and the Court, they are not set forth at length herein. Instead, only those facts relevant to the instant motion are shared.

Jeffrey Glazer is the former Chief Enforcement Officer of Heritage Pharmaceuticals, Inc., and Jason Malek is the former President of same. In 2015, the Department of Justice ("DOJ") began an investigation of Heritage for antitrust violations. Glazer retained Blank Rome, LLP, to

represent the Company and himself in the investigation. In 2016, Heritage sought new representation with Gibson Dunn. Malek retained Lowenstein Sandler, LLP, for representation in his personal capacity.

Gibson Dunn entered into a Joint Defense Agreement ("JDA") with Glazer and Malek for the purposes of strategizing a defense for the DOJ investigation. During a meeting with the DOJ Antitrust Division, Gibson Dunn relayed that Glazer did not have individual counsel. Gibson Dunn then suggested to Glazer that he retain counsel, which he did at WilmerHale, although he was not represented during meetings pursuant to the JDA. Glazer and Malek allege that during such meetings, information was exchanged pertaining to their fraudulent involvement with two corporations called Tal Pharma LLC and Dorado Pharma LLC (collectively "Tal and Dorado"). Gibson Dunn eventually relayed this information and evidence of Glazer and Malek's scheme to defraud the company to the Heritage Board of Directors, which then terminated Glazer and Malek in August of 2016 and instituted the current action. Glazer and Malek now file this motion to disqualify Gibson Dunn as counsel for Heritage based on Gibson Dunn's alleged violation of the American Bar Association Rule of Professional Conduct ("RPC") 1.9(a) by using confidential information against a former client in a matter substantially related to the earlier representation.

## II. Analysis

### A. Legal Standard

Local Civil Rule 103.1(a) establishes that the RPCs as revised by the Supreme Court of New Jersey govern the conduct of the members of the bar admitted to this Court. *See United States v. Balter*, 91 F.3d 427, 435 (3d Cir.1996), cert. denied 519 U.S. 1011, 117 S.Ct. 517, 518, 136 L.Ed.2d 406 (1996); *see also Wyeth v. Abbott Labs.*, 692 F.Supp.2d 453, 456 (D.N.J.2010) (stating that when interpreting the RPC Courts "look mainly to New Jersey state courts' opinions and

modify them only when federal law requires or permits"). "Resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against a client's right to freely choose his counsel." *Steel v. General Motors Corp.*, 912 F.Supp. 724, 733 (D.N.J.1995).

Motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes devastating implications. *Carlyle Towers Condominium Ass'n v. Crossland Sav.,* 944 F.Supp. 341, 345 (D.N.J.1996); *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993). Although doubts are to be resolved in favor of disqualification, a party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof. *Carlyle Towers*, 944 F.Supp. at 345; *Alexander*, 822 F.Supp. at 1114. The movant bears the burden of proving that disqualification is justified. *City of Atlantic City v. Trupos*, 201 N.J. 447, 463, 992 A.2d 762; *Maldonado v. New Jersey*, 225 F.R.D. 120, 136-37 (D.N.J.2004). Disqualification motions require careful scrutiny of the underlying facts and a "sense of practicality" to avoid unjust results. *See Martin v. AtlantiCare*, No. 10-6793, 2011 WL 5080255, at *2 (D.N.J. Oct. 25, 2011); *Montgomery Acad. v. Kohn*, 50 F.Supp.2d 344, 349 (D.N.J.1999). Disqualification must generally be based in "fact," *Trupos*, 201 N.J. at 464, and "surmise alone cannot support an order of disqualification." *Id.* at 469. However, "nothing in *Trupos* abandon[s] the principle that facts in an ethics-related case may be determined through reasonable inferences, as well as by means of circumstantial evidence." *Twenty-First Century Rail Corp. v. New Jersey*, 419 N.J.Super. 343, 357, 17 A.3d 213 (App.Div.2011), *rev'd on other grounds by Twenty-First Century Rail Corp. v. New Jersey*, 210 N.J. 264 (2012).

Glazer seeks to disqualify Gibson Dunn based on RPC 1.9(a) grounds and the JDA between Glazer, Malek and Heritage. Malek seeks to disqualify Gibson Dunn based on the JDA and the

implied fiduciary duty of confidentiality it created. The Court addresses both motions and grounds for disqualification below.

### B. Discussion

#### 1. Glazer's Motion to Disqualify

In order to establish a conflict under RPC 1.9(a), Glazer must establish: (1) he was a former client of Gibson Dunn, (2) there is a substantial relationship between the subject matter of Gibson Dunn's representation of Glazer in the prior litigation and the issues in the present case, and (3) Glazer's interests here are materially adverse to Heritage's. The only prong not in dispute here is the last, as the parties agree that Glazer's interests in this litigation are materially adverse to Heritage's. The Court, thus, focuses on the first two prongs, which both must be met in order for the Court to find a disqualifying conflict.

It is undisputed that there is no express attorney-client relationship between Glazer and Gibson Dunn. Glazer claims, rather, that there was an implied attorney-client relationship based on the parties' conduct. "To establish an implied attorney-client relationship 'a party must show (1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney.'" *Montgomery Acad.*, 50 F.Supp. 2d at 350 (quoting *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.* 657 F.Supp. 1486, 1495 (N.D. Ill. 1987)). With respect to establishing a "reasonable belief" that the lawyer was acting as the party's attorney, the party seeking disqualification cannot rely on its subjective belief that an attorney-client relationship existed; instead, the "belief must be objectively reasonable under the totality of the circumstances." *Essex Chemical Corp. v. Hartford Acc. & Indem. Co.*, 993 F.Supp. 241, 253 (D.N.J. 1998) (citing *Ageloff v. Noranda*, 936 F.Supp. 72, 76 (D.R.I. 1996)); *Ellis v.*

*Ethicon, Inc.*, Civ. No. 05-726, 2005 U.S. Dist. LEXIS 25705, *12-13 (D.N.J. Oct. 27, 2005) (same).

Here, the evidence before the Court instructs that the agreement between Gibson Dunn and Heritage did not create an attorney-client relationship between the executives at Heritage—Glazer and Malek—in their personal capacity, but that Gibson Dunn was counsel for the company only. First, the engagement agreement between Gibson Dunn and Heritage states that Heritage is the Firm's only client. Notably, there is evidence that during the drafting of the retainer letter, Glazer sent Gibson Dunn suggested edits, including changing the letter to incorporate himself in his personal capacity, but Gibson Dunn rejected the change, signaling to Glazer that it did not intend to represent him individually. (*See* Docket Entry No. 62-5; Exhibit 3 to the Declaration of Scott Hammond).

Second, the Terms & Conditions attached to the engagement letter also expressly state that the identity of the client is only the entity described in the engagement letter, and "unless expressly agreed, [the firm] is not undertaking the representation of any related or affiliated person or entity, nor any family member, parent corporation or entity, subsidiary, or affiliated corporation or entity, nor any of their officers, directors, agents, partners, or employees." (Docket Entry No. 62-4 at 11). While Glazer contends that Gibson Dunn violated RPC 1.13(d) by not providing him an *Upjohn* warning,[1] the clarity of their signing documents militates against this argument, as Gibson Dunn's intentions were explicit and seemingly no clarification of their relationship was needed.

Third, Gibson Dunn attorneys told officials from the Antitrust Division of the DOJ that Glazer was not represented and further advised Glazer to retain counsel, which Glazer promptly

---

[1] The Court notes that an *Upjohn* warning is a notice that corporate counsel provides to employees of a company to clarify the identity of the client so as to make clear that the representation is of the company rather than the individual employee. This is otherwise known as a "corporate *Miranda* warning" and stems from *Upjohn v. United States*, 449 U.S. 383 (1981).

did at WilmerHale. Under the totality of the circumstances, the Court finds that it is not objectively reasonable for Glazer to have believed that the Agreement created an implied attorney-client relationship between himself and Gibson Dunn.

As this Court does not find that an attorney-client relationship existed, it need not reach the question of substantial relationship. However, even if it had found an implied attorney-client relationship existed, Glazer's motion would fail because the claims at issue in this case cannot be considered "substantially related" to those involved in the DOJ investigation. The Court is not persuaded that the Glazer satisfies either standard set out in *City of Atlantic City v. Trupos,* 201 N.J. 447 (N.J. 2010): "[M]atters are deemed 'substantially related' if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation."

As to the first *Trupos* standard, the Court is not persuaded that Glazer provided information, confidential or otherwise, that Gibson Dunn could use against him in the current matter. Notably, the evidence on the record demonstrates that it was Malek who divulged information about Tal and Dorado to Gibson Dunn, not Glazer. It appears that the only exchange between Gibson Dunn and Glazer that even mentioned the companies was in reference to a conversation Gibson Dunn had with Malek in a prior meeting. Further, Glazer does not identify any specific incriminating statements that he made in reference to the companies. As such, Glazer's motion fails the first standard as a threshold matter.

Regarding the second *Trupos* standard, the Court is not persuaded that the DOJ matter and the current action share a "congruity of facts, and not merely similar legal theories." 201 N.J. 447,

467 (N.J. 2010). The JDA concerned the DOJ antitrust investigation, which surrounded Heritage's price fixing in the general pharmaceutical industry. The current matter concerns the fraudulent conduct of the company's own executives who allegedly engaged in a conspiracy to steal millions of dollars' worth of business from it. Notably, Heritage does not assert any anti-trust related claims against Glazer and Malek, which comprised the entirety of the DOJ investigation. Although these matters concern some of the same actors insofar as Glazer and Malek were charged in the DOJ investigation and are the subject of the current matter, these cases involve a myriad of different facts and legal theories. Therefore, the Court does not find that the matters are substantially related.

### A. Malek's Motion to Disqualify

Malek argues that the JDA between Glazer, Malek and Gibson Dunn gave rise to an implied attorney-client relationship and that Gibson Dunn violated its fiduciary duty of confidentiality created by the JDA.[2] The JDA at issue in this case was not express, but the parties agree that the purpose of the agreement was to provide a common defense against Justice Department allegations of price-fixing in the generic pharmaceuticals industry. (*See* Malek Br.; Docket Entry No. 57 at 1). The party asserting the attorney-client privilege in a JDA must show that (1) the communication at issue was made during the course of the JDA, (2) the communication was designed to further the shared interests, and (3) the privilege has not been waived. *See In re Bevill, Bresler & Schulman Asser Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (citing *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F. Supp. 381 (S.D.N.Y. 1975)).

---

[2] The Court notes that Malek's disqualification argument differs from Glazer's in that Malek was represented by Lowenstein Sandler during the time period in question, and therefore claims Gibson Dunn violated the joint defense privilege rather than the traditional attorney-client privilege.

7

Additionally, Section 75 of the Restatement of The Law (Third), Law Governing Lawyers (2000) provides:

> (1) If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged under §§ 68-72 and relates to matters of common interest is privileged as against *third persons*, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.
>
> (2) Unless the co-clients have agreed otherwise, a communication described in Subsection (1) *is not privileged as between the co-clients in a subsequent adverse proceeding between them.*

Emphasis added.

While the entry of a joint defense agreement may give rise to an implied attorney-client relationship, such a result is by no means guaranteed. *See Ford Motor Co. v. Edgewood Properties, Inc.*, Civil Action Nos. 06-1278, 11-448, 2011 WL 5080347, *4 (D.N.J. Oct. 25, 2011) (citing *In re Gabapentin Patent Litig.*, 407 F.Supp. 2d 607, 613-14 (D.N.J. 2005)). Instead, even when a joint defense agreement is at issue, the Court must consider factors bearing on whether it would be objectively reasonable for the party seeking disqualification to believe under the totality of the circumstances that the lawyer in question was acting as its attorney. Such factors include the intent of the alleged client and attorney. *See Essex Chemical*, 993 F.Supp. at 253. The Court is not persuaded that Malek could have reasonably believed Gibson Dunn was representing him, particularly because he retained experienced individual representation from Lowenstein Sandler at the outset of the investigation.

Moreover, the joint defense privilege does not protect the communications between Glazer, Malek and Heritage regarding Tal and Dorado. As the rules make clear, communications made freely during the course of the joint defense are not privileged in subsequent adverse litigation between the parties. The information exchanged during a joint defense agreement is protected

against third parties, but not as between the parties themselves. *See also In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F. Supp. 381 at 394 (S.D.N.Y. 1975) ("[The joint defense privilege] shield may be lowered only when the parties once joined assume the stance of opposing parties in subsequent litigation. This restructuring of the parties' rights is a logical incident of their later posture: when they face one another in litigation, neither can reasonably be allowed to deny to the other the use of information which he already has by virtue of the former's own disclosure.") Further, the information regarding Tal and Dorado was knowingly and voluntarily shared between the other members of the JDA and therefore there was no expectation that the information would be kept confidential as between one another.

Additionally, statements made during a joint defense agreement will only be protected by the joint defense privilege if they were in fact made in furtherance of that shared interest. *See Bevill*, 805 F.2d at 126. Here, the shared interest creating the foundation of the JDA between Glazer, Malek and Heritage was that of strategizing a defense to the DOJ investigation of the company. Therefore, the joint defense privilege only extends to statements made in furtherance of that common goal. It does not, as Malek would suggest, provide a blanket protection over all statements made between Glazer, Malek and Gibson Dunn during the existence of the JDA. (*See* Malek Br.; Docket Entry No. 57 at 9). The Court is not persuaded that the statements Malek made about Tal and Dorado were in furtherance of defending Heritage in the DOJ investigation. The DOJ investigation was premised on Heritage's involvement in price-fixing in the generic pharmaceutical industry. Glazer and Malek's describing their scheme to defraud Heritage cannot be said to be in the interest of the company which was defending itself against anti-trust allegations. Therefore, these statements fall outside the scope of the joint defense privilege.

### III. Conclusion

For the foregoing reasons, both Glazer's and Malek's Motions to Disqualify Gibson Dunn as Counsel for Heritage are DENIED. The Court notes that at this juncture, Gibson Dunn has been replaced by Sills Cummis & Gross P.C. as representation for the Plaintiff in this matter. In light of the Court's determination that Gibson Dunn would not be disqualified from representing Plaintiff, all information in Gibson Dunn's possession, custody and control may be shared with Sills Cummis & Gross P.C.

**IT IS SO ORDERED.**

Dated: March 1, 2019

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE**
